**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:23-cr-27 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| KENDALE WARE, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court on the motion of defendant Kendale Ware ("Ware") for revocation of the detention order. (Doc. No. 22.) Plaintiff United States of America (the "government") opposes the motion. (Doc. No. 26.) The Court finds that the present motion may be resolved on the record and the parties' written submissions. In its *de novo* review of the magistrate judge's detention order, the Court has reviewed the following:

(1) the complaint (Doc. No. 1);

(2) the affidavit supporting the complaint (Doc. No. 1-1);

(3) the Pretrial Services Report (Doc. No. 7 (also appearing at Doc. No. 23));

(4) the magistrate judge's order of detention (Doc. No. 9);

(5) the indictment (Doc. No. 11);

(6) the transcript from the detention hearing (Doc. No. 18);

(7) Ware's motion to revoke and attachments (Doc. No. 22); and

(8) the government's response to the motion to revoke and attachments (Doc. No. 26).

## I.    BACKGROUND

On December 16, 2022, a one-count complaint issued charging Ware with distribution of fentanyl. (Doc. No. 1 (Complaint).) The complaint was supported by an affidavit prepared by Jose A. Alcantara, a Task Force Officer ("TFO") with the Drug Enforcement Administration ("DEA") of Cleveland. (Doc. No. 1-1 (Affidavit).) On January 12, 2023, an indictment issued charging Ware with distributing approximately 9.65 grams of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). (Doc. No. 11.)

At Ware's arraignment on December 16, 2022, the government moved for detention pending trial. Attorney Craig Weintraub participated as appointed counsel for Ware. (Minutes of proceedings [non-document], 12/16/2022.) At the conclusion of the arraignment, Ware was remanded to the custody of the U.S. Marshals and a detention hearing was set. (*Id*.) On December 21, 2022, Magistrate Judge Jonathan D. Greenburg conducted the detention hearing where Ware was, again, represented by counsel. (Minutes of proceedings [non-document], 12/21/2022; Doc. No. 18 (Transcript of Detention Hearing).)

On December 22, 2022, the magistrate judge granted the government's motion for detention. (Doc. No. 9 (Detention Order).) In ordering Ware detained pending trial, the magistrate judge determined that a rebuttable presumption arises under 18 U.S.C. § 3142(e)(3) in favor of detention because Ware was charged with an offense for which a maximum term of imprisonment of 10 years or more is prescribed under the Controlled Substances Act. (*Id.* at 1–2.[1]) The magistrate

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

judge also found that Ware had not presented sufficient evidence to rebut the presumption that no

conditions will reasonably assure his appearance at trial and the safety of the community. (*Id.* at

2.) The magistrate judge also went on to find that the government had established, by clear and

convincing evidence:

> based upon the nature of the instant offense; the Defendant's conduct during his
> arrest for the instant offense; the fact these allegations occurred while the Defendant
> was on community control; and his prior history of failure to abide by [the] Court's
> supervised control, no condition or combination of conditions exists that will assure
> the safety of the community.

(*Id.*)

On March 7, 2023, Ware filed the present motion to revoke the detention order. In support

of his motion, Ware underscores many of the points he made during the detention hearing,

including: that he has significant ties to the area, as he and his family have resided in the Cleveland

area his entire life; that he has an infant son and a newborn residing in the area; that he is the owner

(or part-owner) of two area businesses; and that he graduated from high school and completed one

year of college. (Doc. No. 22, at 4–5.) In addition to the Pretrial Services Report, Ware appends to

his motion support letters from members of his family. (Doc. No. 22-1 (Letters of Support).)

## II.    DISCUSSION

In his motion, Ware is seeking review and revocation of the magistrate judge's order of

detention, pursuant to 18 U.S.C. § 3145(b). Section 3145(b) permits a defendant to seek review of

a pretrial detention order of a magistrate judge. When the district court "acts on a motion to revoke

or amend a magistrate judge's pretrial detention order, [it] acts *de novo* and must make an

independent determination of the proper pretrial detention or conditions of release." *United States

v. Reuben*, 974 F.2d 580, 585 (5th Cir. 1992) (citation omitted).

Having conducted its *de novo* review of the record, the Court independently finds that the government has met its burden of proof and established by a preponderance of the evidence that Ware is a flight risk. Additionally, the Court finds that the record, which includes evidence that was not available at the time of the detention hearing, demonstrates by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community. *See* 18 U.S.C. § 1342(e).

As initial matter, the Court finds that Ware has produced *some* evidence tending to demonstrate that he is not a flight risk or a danger to the community. Regarding the former, Ware has resided with his parents in their Cleveland, Ohio home for 14 years and has lived in the Cleveland area his entire life. He also has two minor children who live in area, and he is the owner (or part owner) of two area businesses. (Doc. No. 22, at 4–5; *see* Doc. No. 7, at 2.) He notes that has never failed to appear for any court proceedings. Additionally, the Court observes that the Pretrial Services Report provides that Ware does not own a passport and has never traveled outside the United States. (Doc. No. 7, at 2.) Regarding the risk of danger, Ware points out that he has no history of violence and has never demonstrated a propensity to commit violent crimes. (Doc. No. 22, at 5.) Because the Court finds that Ware has come forward with sufficient evidence to satisfy his burden of production to rebut the presumption of detention, the Court disagrees with the magistrate judge's determination to the contrary. *See United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (noting that defendant's burden to produce some evidence is not a heavy one); *see, e. g., United States v. Beard*, 528 F. Supp. 3d 764, 772 (N.D. Ohio 2021) (finding similar production sufficient to meet a defendant's modest burden).

4

Accordingly, the Court turns to the government's proffer of evidence and considers the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant;[2] (3) the history and characteristics of the defendant; and (4) nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). As explained below, consideration of these factors leads the Court to conclude that the government has met its burden of persuasion demonstrating, by a preponderance of the evidence, that Ware is a flight risk, and demonstrating, by clear and convincing evidence, that Ware poses a danger to others and the community. In this regard, the Court agrees with the ultimate determination of the magistrate judge.

At the detention hearing, and again in its response brief, the government proffers[3] evidence from the DEA's investigation into alleged drug trafficking activity in the greater-Cleveland area. After conducting a controlled buy of fentanyl from an individual in a gray Jeep Cherokee, a confidential informant confirmed that the Jeep belonged to Ware. On November 11, 2022, Daniel Ratliff was found dead in his vehicle after a suspected fentanyl overdose. Cleveland police officers learned from a confidential informant that the decedent had previously called his drug dealer at a cellular phone number that was later connected to Ware. Subsequent to the detention hearing, the Cuyahoga County Regional Forensic Science Laboratory determined that Ware's DNA was found

---

[2] The Sixth Circuit has clarified that the second factor, relating to the weight of the evidence, refers to "the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948 (citation omitted).

[3] At the hearing, the government proffered the Pretrial Services Report and the complaint and complaint affidavit, as well as several additional facts relating to the DEA's investigation that were not contained in the affidavit. TFO Alvarez also testified at the detention hearing.

on the drug packaging materials containing the fentanyl found in the decedent's car. (Doc. No. 26, at 1–2; Doc. No. 26-1 (Lab Report); *see also* Doc. No. 1-1, at 2–4.)

On November 16, 2022, investigators received information regarding another suspected overdose death that occurred on November 10, 2022. The cellular phone of the decedent, Jason Witnik, contained text messages from his suspected drug dealer. The number was the same number identified as belonging to Ratliff's drug dealer and, again, was connected to Ware. Utilizing Witnik's phone, and posing as Witnik, TFO Alcantara exchanged text messages with a cell phone utilizing the above-mentioned number in an effort to arrange another drug transaction. An individual driving a white, 4-door Volkswagen Jetta arrived at the agreed-upon location, but when officers approached with lights and sirens, the driver pulled the vehicle onto the neighbor's yard and fled the scene at a high rate of speed. Police initially gave chase but ultimately terminated their efforts for safety reasons. Later that day, Ware's girlfriend, Jayla Kyle, reported as missing a car that matched the description of the car used by the drug dealer. (Doc. No. 26, at 3 (citing Doc. No. 26-2 (Police Report); *see also* Doc. No. 1-1, at 4–6.)

Investigations also discovered evidence relating to other cellular phone numbers and vehicles associated with Ware's alleged drug trafficking.[4] One such vehicle—a blue Honda—was located by officers on December 13, 2022, and officers attempted to initiate a traffic stop. The vehicle drove away at a high rate of speed onto the highway. Law enforcement terminated the pursuit when the vehicle exited the highway onto a city street. (Doc. No. 26, at 3–6; *see also* Doc. No. 1-1, at 5–8.)

---

[4] During the December 15, 2022, search of Ware's residence, investigators placed a call to one of the cellular phone numbers suspected to be utilized by Ware, causing a cellular phone in the bedroom to ring. (Doc. No. 26, at 7; *see also* Doc. No. 1-1, at 9.)

Turning to the factors that guide the Court's analysis, the Court finds that the nature and circumstances of the charged offenses favor continued detainment. Ware was arrested after an investigation tied him to drug trafficking that allegedly resulted in two fatal overdoses. In addition to evidence linking him to cellular phone numbers and vehicles involved in this suspected distribution of fentanyl, DNA evidence purportedly ties him to the drugs found in the vehicle where the first victim died. Evidence of drug trafficking (and especially the DNA evidence, which was not available at the time of the detention hearing) strongly weighs in favor of finding that Ware represents a danger to others and to the community. *See Stone*, 608 F.3d at 939 n.6 ("[D]rug trafficking is a serious offense that, in itself, poses a danger to the community." (citing and quoting *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989) ("[t]he risk of continued narcotic trafficking on bail constitutes a risk to the community"))). Moreover, evidence that Ware attempted to flee from police in a vehicle at a high rate of speed on two separate occasions speaks both to the danger he poses to the community and the likelihood that he would flee the jurisdiction if released. The fact that Ware is facing a lengthy prison sentence if convicted on the underlying charge also suggests that he is a flight risk. *See United States v. You*, No. 2:19-cr-14, 2019 WL 2426659, at *6 (E.D. Tenn. June 10, 2019) (considering lengthy prison sentence as an incentive to flee).

The weight of the evidence regarding Ware's dangerousness also favors detention. While defense counsel argued at the hearing, and again in the briefing on the present motion, that much of the evidence in the government's proffer was circumstantial, the aforementioned DNA evidence directly links defendant's alleged drug trafficking activities to a fatal overdose. As the overdose deaths of Ratliff and Witnik sadly confirm, the dangers associated with the trafficking of large quantities of drugs, especially drugs as serious as fentanyl, are considerable. *See, e.g., United*

7

*States v. Taylor*, 449 F. Supp. 3d 668, 673 (E.D. Ky. 2020) (finding in favor of pretrial detention, noting that "Taylor is accused of distribution of fentanyl, an exceptionally dangerous drug. It is beyond dispute that distributing narcotics is a serious offense that poses dire health risks to the community—and the risks with fentanyl specifically are even greater"). As the government observes, the Sixth Circuit "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the mill drug dealers, even without any indication that the defendant has engaged in violence." *Stone*, 608 F.3d at 947 n.6 (collecting cases).

Likewise, the third factor—the history and characteristics of the defendant—favors detention. The Pretrial Services Report reflects that Ware was on probation at the time of the instant offense, and he had prior state court convictions for failure to comply with an officer's orders and drug trafficking. (Doc. No. 7.) The current charge suggests that, if anything, Ware's conduct is escalating as he is now alleged to have trafficked a substantial amount of fentanyl. This is especially troubling when the Court considers pretrial release, given that Ware has prior community control violations for noncompliance and for using drugs while on supervision. (*Id.*)

The fourth category—the nature and seriousness of the danger to others—strongly favors continued detention. As set forth above, Ware is alleged to have trafficked fentanyl, and this trafficking is tied to two fatal overdoses. This activity, when coupled with his parole violations and drug trafficking conviction, raises serious concerns that Ware will continue to traffic dangerous drugs if he is released from custody. His apparent willingness to risk the safety of the public by leading police on highspeed chases on city streets further underscores his dangerousness and calls into question whether he will appear as ordered by the Court for proceedings in this matter.

The Court has considered Ware's ties to the community and the support of his family, as well as his participation in two family-owned businesses. Nevertheless, the Court concludes that there are no conditions that can reasonably assure Ware's appearance in court and the safety of any person or the community, making pretrial release inappropriate at this time.

### III.    CONCLUSION

For the foregoing reasons, as well as the reasons set forth in the government's response, the Court finds that the government has demonstrated by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community. The Court also finds that the government has demonstrated by a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure Ware's appearance as required. Accordingly, Ware's motion to revoke detention is DENIED.

**IT IS SO ORDERED**.

Dated: June 23, 2023

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT COURT**
**CHIEF JUDGE**

9